**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| **STEPHANIE PITTS**, individually, and on behalf of others similarly situated, | : : : | Case No: |
| Plaintiff, | : : | Hon. |
| v. | : : | Mag. |
| **WILLIS TOWERS WATSON US LLC**, a limited liability company, and **EXTEND HEALTH, LLC**, a limited liability company, | : : : : : | |
| Defendants. | : : | |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Stephanie Pitts ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Willis Towers Watson US LLC and Extend Health, LLC ("Defendants"), and states as follows:

**INTRODUCTION**

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and common law.

2.    Willis Towers Watson US LLC ("WTW" or "Defendant WTW") holds itself out to be "a leading global advisory, broking and solutions company that helps clients around the world turn risk into a path for growth."[1]

---

[1]    *See*  https://investors.wtwco.com/news-releases/news-release-details/willis-towers-watson-announces-nasdaq-ticker-symbol-change-wltw (last visited Aug. 1, 2023)

3.     According to its website, Defendant WTW maintains an Individual Marketplace, Via Benefits, for Medicare-Eligible and Pre-Medicare Retirees.[2] Through the former, "[r]etirees can select a health care plan from a wide array of affordable options that not only fit their medical and financial needs but also typically allow them to obtain equal or better benefits than they currently have at a lower cost." *Id*. Through the latter, Defendant WTW "partner[s] with organizations to help pre-Medicare retirees find health coverage that fits their specific needs and budget." *Id*.

4.     Defendant, Extend Health, LLC ("Defendant Extend Health"), which upon information and belief was once known as Extend Health, Inc., is "a Willis Towers Watson Company."[3]

5.     In providing the aforementioned services, Defendants employed customer service representatives in remote call center settings across the United States. Defendants used a number of titles, including, but not limited to, Customer Service Representative and Business Support Assistant - Pre-Enrollment Specialist, to refer to their call center employees (collectively referred to herein as "CSRs"). Defendants heavily relied on CSRs to, among other things, support Medicare eligible participants across the country by answering general questions and concerns, creating profiles, and updating/verifying profile information.

6.     Defendants classified their CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

7.     Defendants employed Plaintiff as an hourly call center employee with the job title of CSR.

---

[2] https://www.wtwco.com/en-us/solutions/services/retiree-health-solutions (last visited Aug. 1, 2023).
[3] *See* https://www.sec.gov/Archives/edgar/data/1470215/000119312512233757/d352831dex991.htm (last visited Aug 1., 2023).

8.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

9.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

10.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

11.     Defendants violated the FLSA and common law by systematically failing to compensate their CSRs for work tasks completed before and after their scheduled shifts when they were not logged into Defendants' timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

12.     More specifically, Defendants failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendants' timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

---

[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 1, 2023).

13.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

14.    At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

16.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

17.    Defendants' annual sales exceed $500,000, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

18.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

19.    This Court has personal jurisdiction over Defendants because Defendants conduct business within the state of Pennsylvania, employ individuals within the state of Pennsylvania, and are registered with the Pennsylvania Department of State.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this district and a substantial portion of the events that give rise to Plaintiff's claims occurred in this district.

## PARTIES

21.    Plaintiff Stephanie Pitts is a resident of Kountze, Texas and worked remotely for Defendants as an hourly, non-exempt CSR from approximately August 2022 through January 2023. Defendants compensated Plaintiff through the payment of an hourly rate, most recently $15.50 per hour. Plaintiff Pitts signed a consent to join this collective action, which is attached as **Exhibit A**.

22.    Additional Opt-In Plaintiffs were or are employed by Defendants as CSRs during the past three years and their consent forms will also be filed in this case.

23.    Defendant Willis Towers Watson US LLC is a Delaware limited liability company (File No. 520826) registered with the Pennsylvania Department of State (No. 395767). Defendant WTW has a registered agent for service of process listed as Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

24.    Defendant Extend Health, LLC is a Delaware limited liability company (File No. 4392500) registered with the Pennsylvania Department of State (No. 6295720). Defendant Extend Health has a registered agent for service of process listed as Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## GENERAL ALLEGATIONS

25.    Defendants paid their CSRs at varying hourly rates.

26.    Defendants' CSRs typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

27.    While Defendants have access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

28.    Prior to being hired, Defendants provided prospective CSRs with a written offer setting forth the CSR's terms of employment, the offered rate of pay, work schedule and other information.

29.    Defendants maintain documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

30.    Plaintiff received an offer from Defendants to work as a CSR, and she accepted Defendants' offer with the understanding that her base hourly rate would be paid for all hours worked.

31.    Plaintiff performed under the contract with Defendants by carrying out her job duties and responsibilities. More specifically, Plaintiff created and/or updated participant profiles, transferred callers to licensed benefit advisors and answered questions about participant retirement plans and available funds. The aforementioned customer service was provided via inbound and outbound calls and Plaintiff would utilize Defendants' applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

32.    Defendants provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendants' policies. The training that all of Defendants' CSRs received was substantially, if not entirely, the same.

33.    At all relevant times, Defendants controlled Plaintiff and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

34.    In order to perform their job duties, Plaintiff and Defendants' CSRs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

35.    Plaintiff and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendants prohibited them from clocking in before the start of their shift. This required Defendants' CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendants' CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

36.    Additionally, Defendants maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready" status. Defendants enforced these policies and procedures by routinely evaluating CSRs and enforcing their overtime policy that prohibited CSRs from "work[ing] more than 40 hours in a work week without prior approval from [their] supervisor."

37.    All of Defendants' CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

38.    Similarly, Defendants' CSRs, including Plaintiff, performed work off-the-clock at

the end of their scheduled shift, after clocking out of Defendants' timekeeping system, when they shut-down/log out of the programs, applications and servers that they utilized during their shifts.

39.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and their CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

40.     The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendants and was integral and indispensable to the CSRs' job responsibilities.

41.     As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately thirty (30) to forty (40) minutes of compensation every day.

42.     At all relevant times, Defendants were able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

43.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

44.     Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

46. Upon information and belief, Defendants also possess, control, and/or have access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

47. Because Defendants required their CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendants. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A. Pre-Shift Off-the-Clock Work**

48. Pursuant to Defendants' policies, training, and direction, Plaintiff and all other CSRs were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including logging into multiple computer networks, software programs and applications. Defendants' CSRs only received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

49. The off-the-clock pre-shift process took substantial time on a daily basis, approximately fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

  a. Turn on their computer;

  b. Log into Microsoft Windows using their password;

  c. Connect and log into Defendants' server (the Virtual Private Network or "VPN") using a Duo Fob – this process entailed CSRs obtaining an access token on the fob and entering the token into their computer;

  d. Open and log into CEP using a username and password (CEP was Defendants' customer platform software that CSRs used to access participant accounts);

  e. Open Microsoft Edge;

f.  Open Microsoft Teams – this application was used for internal communications with managers and other team members;

g.  Open pages and articles that CSRs use throughout their day to handle calls for and answer questions from participants;

h.  Log into the WTW website using a username and password;

i.  Log into Oracle, the timekeeping system, using a username and password;

j.  Open WTW applications containing additional participant retirement information;

k.  Log into the phone system;

l.  Clock in and go into a "ready" status.

50.     Defendants' CSRs must complete this process before the start of their scheduled shift and before fielding calls. Consequently, the CSRs must arrive to work approximately (15) to twenty (20) minutes before their scheduled shift to complete their above-described start-up and log-in activities.

51.     Defendants' CSRs were not compensated for all of this time because Defendants prohibited CSRs from clocking into their timekeeping software before the start of their scheduled shift.

52.     The pre-shift off-the-clock work CSRs performed directly benefitted Defendants, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Post-Shift Off-the Clock Work**

53.     Pursuant to Defendants' policies, training, and direction, Plaintiff and all other CSRs were required to clock-out as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems to make certain they were clocked-out the moment they stop fielding participant queries.

54.     After they clocked out for the day, CSRs, including Plaintiff, were forced to shut-down/log-out of the various computer programs and software applications they utilized in performing their job duties, log out of Defendants' VPN and shut down their computer. This resulted Plaintiff and other CSRs performing an additional approximate fifteen (15) to twenty (20) minutes of off-the-clock work every day.

55.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

### C.   The Off-the-Clock Work Results in Viable "Gap Time" Claims

56.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

57.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

58.     During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight time wages, in breach of Defendants' contracts with their CSRs.

### D.   Plaintiff's Exemplary Workweek

59.     Defendants paid their CSRs on a biweekly basis. The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendants;

however, as an example of one pay period where Defendants failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of August 21, 2022 – September 3, 2022:

- Plaintiff worked less than 40 hours in one week at a rate of $15.50 per hour and upon information and belief was paid $15.50 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 30 to 40 minutes or more at her regular rate of $15.50 for each regular hour.

- Plaintiff worked more than 40 hours in one week at a rate of $15.50 per hour and upon information and belief was paid $23.25 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 30 to 40 minutes or more at her overtime rate of $23.25 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit B**, Pitts Exemplary Pay Statement.

## <u>JOINT EMPLOYMENT ALLEGATIONS</u>

60.     At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and the CSRs.

61.     For example, the offer letters Defendants provided to Plaintiff stated, "On behalf of Extend Health LLC, a Willis Towers Watson Company, … **we** are very pleased to formally offer you a role…" (emphasis added). Throughout the offer letters, which were sent from Defendant WTW Senior Director of Global Human Resource Operations, Brady Jensen, repeatedly used the words "our" and "we" to refer to Defendants WTW and Extend Health, LLC: "Following **<u>our</u>** assessment of your skills and capabilities, **we** feel confident that you will make a valuable contribution to Willis Towers Watson's position as a leading global advisory, broking and solutions company. This letter serves to document the terms of **<u>our</u>** offer." (emphasis added).

62.    The offer letters additionally contained a "Willis Towers Watson" heading.

63.    According to Defendants' offer letters, "Willis Towers Watson" could terminate Plaintiff and the CSRs' employment.

64.    At all relevant times, Defendants managed the day-to-day supervision and direction of the CSRs, including Plaintiff.

65.    At all relevant times, Defendants' corporate policies and procedures, including their joint Code of Conduct dictated, guided and mandated Plaintiff and the CSRs' jobs.

66.    At all relevant times, Defendants maintained the Plaintiff and other CSRs' employment records.

67.    The unlawful conduct at issue in this case arises from Defendants' corporate policies for CSRs.

## COLLECTIVE ACTION ALLEGATIONS

68.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendants at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

69.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

70.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

71.     Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

72.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

73.     Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

74.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

  a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

  b. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

  c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants.

75.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

76.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of

whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

77.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without compensation; and 2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks and overtime for hours worked over forty (40) in a week.

78.     Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

79.     The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

80.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend

this definition if necessary.

81.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

82.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.   Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b.   Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

c.   Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

d.   Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

83.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

84.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

85.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

86.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

87.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

88.    Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### FLSA COLLECTIVE ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

89.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

90.    At all times relevant to this action, Defendants were subject to the mandates of the

FLSA, 29 U.S.C. § 201, *et seq*.

91.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

92.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

93.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

94.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

95.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

96.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

97.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

98.    At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred

and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

99.     The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was not significant.

100.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207.

101.     As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

102.     Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

103.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

104.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

105.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

106.    Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

107.    For example, Defendants offered to compensate Plaintiff at a minimum of $15.50 per hour if she agreed to perform services for Defendants as a CSR. Plaintiff accepted Defendants' offer and performed her duties as CSRs in reliance on the offer.

108.    Defendants breached their contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

109.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $15.50 per hour within the applicable period.

110.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

111.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

112.   Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

113.   Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

114.   Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

115.   As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

116.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

117.   This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

118.   At all times relevant to this action, Defendants promised Plaintiff and every other

Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

119.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

120.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

121.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

122.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

123.    Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

124.    Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

125.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources

in a profitable manner.

126.    As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

<u>**RELIEF REQUESTED**</u>

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.    An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.    An Order declaring Defendants' violations of the FLSA were willful;

h.    An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.    An Order declaring Defendants were unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j.    An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full

amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

Dated: August 1, 2023                    Respectfully Submitted,

                                         */s/ Adam S. Levy*
                                         Adam S. Levy
                                         LAW OFFICE OF ADAM S. LEVY, LLC
                                         P.O. Box 88
                                         Oreland, PA 19075
                                         Telephone: 267-994-6952
                                         adamslevy@comcast.net

                                         Kevin J. Stoops (*pro hac vice* forthcoming)
                                         Alana Karbal (*pro hac vice* forthcoming)
                                         SOMMERS SCHWARTZ, P.C.
                                         One Towne Square, 17th Floor
                                         Southfield, Michigan 48076
                                         Telephone: 248-355-0300
                                         kstoops@sommerspc.com
                                         akarbal@sommerspc.com

                                         *Attorneys for Plaintiff and the*
                                         *Putative Collective/Class Members*

## JURY DEMAND

Plaintiff, Stephanie Pitts, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 1, 2023                    Respectfully Submitted,

                                         */s/ Adam S. Levy*
                                         Adam S. Levy
                                         LAW OFFICE OF ADAM S. LEVY, LLC
                                         P.O. Box 88
                                         Oreland, PA 19075
                                         Telephone: 267-994-6952
                                         adamslevy@comcast.net

                                         Kevin J. Stoops (*pro hac vice* forthcoming)
                                         Alana Karbal (*pro hac vice* forthcoming)
                                         SOMMERS SCHWARTZ, P.C.
                                         One Towne Square, 17th Floor
                                         Southfield, Michigan 48076
                                         Telephone: 248-355-0300
                                         kstoops@sommerspc.com
                                         akarbal@sommerspc.com

                                         *Attorneys for Plaintiff and the*
                                         *Putative Collective/Class Members*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

|  |  |  |
|---|---|---|
| **STEPHANIE PITTS**, individually, and on behalf of others similarly situated, | : : : : | Case No: |
| Plaintiff, | : : | Hon. |
| v. | : : | Mag. |
| **WILLIS TOWERS WATSON US LLC**, a limited liability company, and **EXTEND HEALTH, LLC**, a limited liability company, | : : : : : | |
| Defendants. | : | |

**CONSENT TO JOIN**

1.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.    I worked for Extend Health, LLC as an hourly employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

3.    I hereby designate Sommers Schwartz, P.C. and Law Office of Adam S. Levy, LLC to represent me in this lawsuit.

Signature:    _Stephanie Pitts_____

Print Name:    Stephanie pitts_____

Date Signed:    07/31/2023_____

# EXHIBIT B

WILLIS TOWERS WATSON LTTLJ

| OID. | FILE | DEPT. | CLOCK | NUMBER |
|------|------|-------|-------|--------|
| 9AB | 243809 | | 0000025837 | 1 |

WILLIS TOWERS WATSON
1735 MARKET STREET
PHILADELPHIA, PA 19103-7501

# Earnings Statement

Period Beginning: 08/21/2022
Period Ending: 09/03/2022
Pay Date: 09/09/2022

**STEPHANIE L PITTS**

Filing Status: Head of household
Exemptions/Allowances:
Federal: Standard Withholding Table

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 15.5000 | 72.62 | 1,125.61 | 2,788.76 |
| Overtime | 23.2500 | .41 | 9.53 | 17.20 |
| **Gross Pay** | | | **$1,135.14** | 2,805.96 |

| Deductions | Statutory | | | |
|------------|-----------|--|--|--|
| | Social Security Tax | -70.38 | | 173.97 |
| | Medicare Tax | -16.46 | | 40.69 |
| | **Net Pay** | **$1,048.30** | | |
| | **Net Check** | **$1,048.30** | | |

Your federal taxable wages this period are
$1,135.14

| Other Benefits and Information | this period | total to date |
|-------------------------------|-------------|---------------|
| EMPLOYEE ID | | 2055382 |

**Important Notes**
703-258-8000    WILLIS TOWERS WATSON OFFICE

VERIFICATION OF EMPLOYMENT CONTACT 1.877.664.8778
/WORKFORCESOLUTIONSSUPPORT@EQUIFAX.COM    CODE
17335

**Additional Tax Withholding Information**
Taxable Marital Status:
TX:    Single
Exemptions/Allowances:
TX:    No State Income Tax

WILLIS TOWERS WATSON LTTLJ

WILLIS TOWERS WATSON
1735 MARKET STREET
PHILADELPHIA, PA 19103-7501

9AB    66-150/531
**Payroll check number:** 0000025837
Pay date: 09/09/2022

Pay to the
order of:    **STEPHANIE L PITTS**

This amount:    **ONE THOUSAND FORTY EIGHT AND 30/100 DOLLARS**    $1048.30

VOID NON-NEGOTIABLE   VOID NON-NEGOTIABLE

THIS IS NOT A CHECK

WELLS FARGO BANK, N.A.